# Exhibit 1

# FORBEARANCE AND RELEASE AGREEMENT

This Forbearance and Release Agreement (this "Agreement") is entered into as of October 8, 2025 (the "Effective Date") by and between **Future Meat Technologies, Inc., d/b/a Believer Meats**, a Delaware corporation ("**Owner**" or "**Believer**"), and **Gray Construction, Inc. d/b/a James N. Gray Company, Inc.**, a Kentucky corporation ("**Design-Builder**" or "**Gray**"). Owner and Design-Builder are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

A. <u>Design-Build Agreement and Amendment</u>. Believer and Gray are parties to a certain AIA A141 Standard Form of Agreement Between Owner and Design-Builder dated May 19, 2023 and AIA A141 Exhibit A Design-Build Amendment dated March 29, 2024 (together and as amended with all subsequent changes, the "**DB Agreement**") relating to Project Cascade – Design, Engineering and Construction of Commercial Plant in Wilson, NC (the "**Project**").

B. <u>Note and Mortgage</u>. In connection with the Project to evidence a revised payment schedule for the amounts owed and incurred under the DB Agreement in the completion of the Project, Believer executed in favor of Gray a certain Promissory Note dated October 15, 2024 in the original principal amount of $25,000,000.00 (as amended, the "**Note**"), secured by a certain Deed of Trust dated October 15, 2024, recorded in Book 3086, Page 770, Wilson County, North Carolina Register of Deeds (as amended, the "**Deed of Trust**" or "**Mortgage**," and together with the Note, the "**Loan Documents**").

C. <u>Amount Due and Owing to Gray</u>.  As of September 30, 2025, the total amount currently due and owing under the DB Agreement is $35,177,715.05 (not including interest or the cost of utilities after September 26, 2025) (the "**Contract Balance**") and the total outstanding balance due and owing under the Note which includes the Contract Balance and interest is $36,475,655.60 (the "**Amount Owed**").

D. <u>Disputes; Alleged Breaches</u>. Disputes have arisen between the Parties regarding performance under the DB Agreement and payment obligations under the Loan Documents. Gray contends that Believer is in breach of the DB Agreement and in default under the Loan Documents. Believer disputes Gray's contentions and contends that Gray has failed to perform under the DB Agreement which Gray disputes.

E. <u>Owner Financing</u>.  Believer is in the process of identifying and entering into loan(s) or other financial arrangement(s) to raise funds to pay the Amount Owed no later than the Payment Deadline identified below (the "**Financial Arrangements**").

F. <u>Purpose</u>. To avoid immediate escalation and to facilitate a negotiated resolution, the Parties desire that (i) Gray defers its right to pursue any Notice(s) of Default under the DB Agreement and the Loan Documents during a limited period and (ii) Gray accepts Final Payment which is less than the Amount Owed, in exchange for (a) Believer's release of all claims it may have against Gray relating to the Project and DB Agreement, and (b) Believer's commitment to settle the Amount Owed to Gray with a total final payment of **$34,000,000.00** ("**Final Payment**"), all on the terms set forth herein.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

## 1. Forbearance / Deferral of Default Notices

1.1     <u>Deferral</u>. Subject to the terms of this Agreement and during the Forbearance Periods only, Gray agrees to defer its right to pursue any Notice(s) of Default or other formal written default or acceleration notice to Believer under (i) the DB Agreement and (ii) the Note and Mortgage on account of any existing or currently asserted breaches or defaults occurring on or before the Effective Date, and will refrain from initiating any new judicial or non-judicial enforcement action based solely on such pre-Effective Date breaches or defaults.

1.2 <u>Forbearance Period</u>. The "**Forbearance Periods**" means the periods commencing on the Effective Date and ending on the earliest to occur of:

    (i) 11:59 p.m. ET on <u>**December 5, 2025**</u> for the First Payment as set forth in § 4.1 (the "**First Payment Deadline**");

    (ii) 11:59 p.m. ET on <u>**March 31, 2026**</u> for the Second Payment as set forth in § 4.3 (the "**Second Payment Deadline**");

    (iii) 11:59 p.m. ET on <u>**May 31, 2026**</u> for the Third Payment as set forth in § 4.4 (the "**Third Payment Deadline**");

    (iv) the occurrence of a Termination Event (as defined in § 7); or

    (v) written notice by Design-Builder that Owner has satisfied its obligations hereunder (including payment in § 4) and Design-Builder elects to terminate the Forbearance Periods early.

1.3 <u>No Waiver; Accrual Continues</u>. The foregoing is a temporary forbearance, not a waiver. Except as expressly provided herein, all rights, remedies, liens, claims, security interests, and entitlements of Gray under the DB Agreement and Loan Documents are preserved and continue in full force and effect. Interest, fees, costs, and charges (including default interest if applicable under the Note) shall continue to accrue in accordance with the Loan Documents.

1.4 <u>Post-Effective Date Breaches</u>. Nothing herein prohibits Gray from sending a Notice of Default or exercising remedies for any new breach or default occurring after the Effective Date, or any breach of this Agreement.

**2. Owner Release of Claims**

2.1 <u>Release</u>. Effective as of the Effective Date, and as material consideration for the forbearance in § 1, Believer, on behalf of itself and its past, present, and future parents, subsidiaries, affiliates, successors, assigns, insurers, and each of their respective officers, directors, managers, members, partners, employees, and agents (collectively, the "**Owner Releasing Parties**"), hereby unconditionally and irrevocably releases, waives, and forever discharges Gray and its past, present, and future parents, subsidiaries, affiliates, successors, assigns, subcontractors, designers, consultants, lenders, insurers, sureties, and each of their respective officers, directors, managers, members, partners, employees, and agents (collectively, the "**Design-Builder Released Parties**") from any and all claims, demands, liabilities, debts, damages, losses, costs, expenses, actions, and causes of action of every kind arising out of or relating to the Project, the DB Agreement, the Loan Documents, and any acts, omissions, events, or circumstances occurring on or before the Effective Date except as otherwise reserved or carved out below (collectively, the "**Released Claims**").

2.2 <u>Carve-Outs</u>. The release in § 2.1 does not release: (a) obligations expressly created by this Agreement, (b) Gray's completion of the Open Items by the deadlines indicated in Exhibit A, or (c) latent defects unknown and reported as of the Effective Date that are covered by the warranty rights as set forth in the DB Agreement except for pipe welds or related piping claims. For the avoidance of doubt, any and all pipe welds and related piping issues (whether known or unknown, apparent or latent, suspected or unsuspected) are included as Released Claims and are not carved out or retained by this section.

**3. Foreclosure Remedies**

3.1 <u>Trigger Events</u>. Each of the following constitutes a "Trigger Event":

(a) Believer fails to pay the Final Payment in full as set forth in this Agreement;
(b) Believer materially breaches this Agreement;
(c) Believer is likely to become insolvent, admits insolvency, makes an assignment for the benefit of creditors, or becomes subject to any bankruptcy or insolvency proceeding (voluntary or involuntary) that is not dismissed within thirty (30) days; or
(d) any lien or encumbrance senior to or pari passu with the Mortgage is recorded or asserted against the mortgaged property without Gray's prior written consent prior to the closing of the Financial Arrangement contemplated by this Agreement.

3.2 <u>Waivers; Cooperation</u>. To the maximum extent permitted by law and notwithstanding Believer's rights in any bankruptcy or insolvency proceeding, Believer agrees to waive defenses, notices, cure periods, bonds, and stays, and shall cooperate and execute any further documents reasonably requested to effectuate expedited foreclosure and sale.

## 4. Payment Terms

4.1 <u>First Payment</u>. As part of any closing of, and from any proceeds from, a Financial Arrangement or otherwise, Believer shall pay $22,000,000.00 to Gray in immediately available funds by wire transfer per the DB Agreement no later than the First Payment Deadline. Time is of the essence.

4.2 <u>Release of Deed of Trust</u>. On the condition that the $22,000,000.00 payment will be made as part of the closing of any Financial Arrangement, Gray will release its Deed of Trust on the Project and deliver customary instruments of satisfaction/reconveyance of the Mortgage for recording, and shall otherwise cooperate with Believer as may be reasonably necessary in order to support the closing.

4.3 <u>Second Payment</u>. Believer shall pay to Gray $6,000,000.00 no later than the Second Payment Deadline.

4.4 <u>Third Payment</u>. Believer shall pay to Gray $6,000,000.00, inclusive of the retainage, no later than Third Payment Deadline.

4.5 <u>Receipt; Satisfaction</u>. Upon Gray's receipt of payment for the total Final Payment, Gray shall, (a) surrender or mark the Note "Paid in Full," and (b) execute a release of claims against Believer. For the avoidance of doubt, unless and until Gray is fully paid pursuant to this Agreement, the Note remains in full force and effect with its principal reduced based on the payments made and received.

## 5. Covenants During Forbearance

5.1 During the Forbearance Periods, Believer shall:
(a) Not encumber, sell, transfer, or further lien the mortgaged property or any material Project assets, except (i) ordinary-course liens for taxes not yet due, (ii) as part of a Financial Arrangement contemplated by this Agreement, or (iii) as otherwise expressly approved in writing by Gray;
(b) Maintain insurance on the Project as required by the DB Agreement and Loan Documents and provide adequate evidence of such insurance upon request by Gray;
(c) Preserve the Project and related property and not commit or permit waste; keep the Project in at least its current condition, subject to ordinary wear and tear and weather events;
(d) Provide information reasonably requested by Gray including, but not limited to, the Financial Arrangement, Believer's business, the guarantor, security and other related information within five (5) business days of request;
(e) Not file or support any mechanic's or materialman's lien or claim against Gray; and use commercially reasonable efforts to bond off or discharge any third-party liens encumbering the Project within twenty (20) days of knowledge thereof;
(f) Comply with laws applicable to the Project, including building codes and safety laws;
(g) Pay taxes and assessments on or before the due date (subject to good-faith contest with adequate reserves); and
(h) Not terminate, assign, or materially amend the DB Agreement, the Mortgage, or any material Project contract without Gray's prior written consent.

## 6. Additional Security and Rights

6.1 <u>Corporate Guarantee</u>. Before or as a part of the closing of Believer's Financial Arrangement, Believer shall provide an acceptable corporate guarantee from its parent company for the remaining balance owed to Gray after the First Payment (the "**Guarantee**"), with such remaining balance to be paid as set forth in § 4.

6.2 <u>Interest Reinstatement</u>. Upon the occurrence of a Triggering Event, Gray shall have the right to recover the interest as set forth in the Note which was originally waived to establish the Final Payment amount.

6.3 <u>Consent to Judgment</u>. Before or as a part of the closing of Believer's Financial Arrangement, Believer agrees to and shall execute and deliver to Gray a Consent to Judgment and Foreclosure (the "**Consent to Judgment**"), consenting to entry of judgment of foreclosure of the collection of the remaining balance owed under Note in the court of competent jurisdiction specified in § 12. Gray shall hold the Consent to Judgment in trust and not execute on it unless and until the occurrence of a Trigger Event. The judgment amount shall include the remaining balance owed of the Final Payment, accrued and accruing interest as allowed in § 6.2 (including default interest if applicable), fees, costs (including reasonable attorneys' fees), and other amounts due under the Note.

## 7. Termination Events; Effect

7.1 <u>Termination Events</u>. Each of the following is a "Termination Event":
(i) any Trigger Event;
(ii) any material breach of this Agreement by Believer; or
(iii) any representation or warranty of Believer herein is untrue or misleading in any material respect.

7.2 <u>Effect of Termination</u>. Upon a Termination Event, the Forbearance Periods automatically ends without further notice, and Gray may immediately exercise any and all rights and remedies under this Agreement, the DB Agreement, the Note, the Mortgage, and applicable law. Any tolling of deadlines or cure periods during the Forbearance Periods shall cease, and all such periods shall be deemed satisfied to permit immediate enforcement.

## 8. Representations and Warranties

8.1 <u>Mutual</u>. Each Party represents and warrants that: (a) it is duly organized, validly existing, and in good standing under the laws of its formation; (b) it has full power and authority to enter into and perform this Agreement; (c) this Agreement is duly authorized, executed, and delivered and constitutes a legal, valid, and binding obligation enforceable against such Party, subject to bankruptcy and equitable principles; and (d) the execution, delivery, and performance of this Agreement do not violate its governing documents or any material contract to which it is a party.

8.2 <u>Owner Specific</u>. Believer further represents and warrants that: (a) title to the mortgaged property is as reflected in the recorded Mortgage, subject only to matters of record; (b) no additional liens or encumbrances have been voluntarily granted since the Mortgage date except as disclosed in writing to Gray; (c) Believer has not assigned any claim released herein; and (d) Believer has consulted with counsel regarding the scope and effect of the release.

## 9. No Admission; Settlement Purpose

This Agreement reflects compromise and settlement. No Party admits liability or wrongdoing. This Agreement, the negotiations, and drafts are confidential settlement communications to the maximum extent permitted by law, except that Gray may use and file in court in support of any enforcement action following a Trigger Event.

## 10. Fees and Costs

Believer shall reimburse Gray upon demand for all reasonable out-of-pocket fees and costs, including attorneys' fees, incurred in enforcing this Agreement and any foreclosure or related proceedings.

## 11. Notices

All notices shall be in writing and deemed given when delivered by (i) hand, (ii) overnight courier, or (iii) email with confirmation of transmission (with a copy by one of (i) or (ii)) to the addresses below (or as updated by notice):

- If to Owner:  Believer
  Kash Muthuraman, COO
  Marc Shelley, CLO
  171 N. Aberdeen St., Ste. 400
  Chicago, IL  60607
  kash.muthuraman@believermeats.com
  marc.shelley@believermeats.com

- If to Design-Builder: Gray
  Scott Parker, CFO
  Colby Cox, CLO
  10 Quality Street, Lexington, KY  40507
  sparker@gray.com
  jccox@gray.com

## 12. Miscellaneous

12.1    Integration; Amendments. This Agreement (including Exhibit(s)) constitutes the entire agreement with respect to the subject matter and supersedes all prior term sheets or understandings. Any amendment or waiver must be in writing and signed by both Parties.

12.2    Governing Law. This Agreement shall be governed by the laws of the State of North Carolina, without regard to conflicts-of-law principles.

12.3    Venue; Jurisdiction. The Parties agree to the exclusive jurisdiction of the state and federal courts located in Wilson County, NC, and waive any objection based on forum non conveniens or improper venue.

12.4    Assignment. Believer may not assign this Agreement or any rights hereunder without Gray's prior written consent. Gray may assign its rights, including to any affiliate, lender, or securitization trust, upon notice to Believer.

12.5    Severability. If any provision is held invalid or unenforceable, the remainder shall be enforced to the maximum extent permissible, and the invalid provision shall be deemed modified to the minimum extent necessary to be enforceable.

12.6    Counterparts; E-Signatures. This Agreement may be executed in counterparts, including by electronic signatures and PDF, each of which shall be deemed an original and together constitute one instrument.

12.7    Further Assurances. Each Party shall execute and deliver such further documents and take such further actions as may be reasonably necessary to carry out the purposes and intent of this Agreement.

## 13. Specific Acknowledgments

13.1    Independent Counsel. Believer acknowledges it has been advised to consult, and has consulted, independent legal counsel regarding this Agreement, including the release, and enters into this Agreement voluntarily.

13.2    Sophisticated Parties. The Parties are sophisticated and have jointly participated in drafting. No presumption shall arise against any Party as drafter.

13.3    Survival. §§1.2, 2, 3, 4, 7.2, 8-12 survive termination or expiration of the Forbearance Periods.

**SIGNATURES**

**OWNER:**

**Future Meat Technologies, Inc., d/b/a Believer Meat:**

By: _Gustavo Burger_

Name: Gustavo Burger

Title: CEO

Date: 10/8/2025

By: _M/ashyp_

Name: EE5C583735444D5...

Title: COO

Date: 10/8/2025

**DESIGN-BUILDER:**

**Gray Construction, Inc. d/b/a James N. Gray Company, Inc.**

By: _Scott Parker_

Name: 821F7E73FD064A4...

Title: CFO

Date: 10/8/2025

**Exhibit A – Resolution of Open Items**

Notwithstanding the payment terms in § 4, Gray agrees to address the Open Items as required by the DB Agreement on or before the Completion Dates set forth below.

| | Open Item | Key Gaps | Completion Dates |
|---|---|---|---|
| 1 | Generator Transfer Switch | Repair transfer switch. Will need power shutdown for a few hours | November 14th |
| 2 | Stormwater Pond | Missing plants from around the pond. Impacts Permit from City | December 15th |
| 3 | Waste Water Treatment Plant | Several gaps including: (Full List Shared with Gray)<br> - Instrumentation and monitoring: flow meters, pH monitoring, turbitiy monitoring, redundant sensors<br> - Refrigerated sampler replacement<br> - Chemical pump leaks<br> - Dosing design flaws<br> - Polymer make down system doesn't work<br> - Several leaks in plant<br> - Recirculation pump is down | December 15th |
| 4 | Flume | Design is defective, measurements of flow are inaccurate. Blockage issues. Needs to be reworked. | December 15th |
| 5 | HVAC / BMS | Long list of open items (Captured in report to Gray) including: Air flow in rooms, some units won't turn on, design flaws | December 15th |
| 6 | Doors | Key card access not working, knobs missing, electronics missing from doors | December 15th |
| 7 | Ammonia | Process protocols are incomplete - PSM/PSSR/AEAP | December 15th |
| 8 | Drainage / Grading | Run-off around the building doesn't go to the drains | December 15th |
| 9 | Cracks in Floor | Downstream area has several cracks in the floor, situation has not improved after repairs | December 15th |
| 10 | Automatic Door Activation | Hand sanitization to activate doors is not working | December 15th |
| 11 | Parking Lot | Grading is bad, causing water puddles during rain | December 15th |